IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL NO.:** |
| | ) | |
| | ) | **VIOLATIONS:** |
| **v.** | ) | **18 U.S.C. § 2314 (Interstate** |
| | ) | **Transportation of Money Taken by** |
| | ) | **Fraud); and** |
| **FETEHI MOHAMMED,** | ) | **18 U.S.C. § 1957 (Engaging in Monetary** |
| | ) | **Transactions)** |
| | ) | |
| | ) | **FORFEITURE:** |
| | ) | **18 U.S.C. § 982(a)(1), 981(a)(1)(C),** |
| | ) | **21 U.S.C.§ 853(p); 28 U.S.C. § 2461(c)** |
| **Defendant.** | ) | |

## INFORMATION

The United States Attorney charges that,

### Background

1.     Defendant FETEHI MOHAMMED ("MOHAMMED) was a resident in the
District of Columbia and Virginia.

2.     At all times relevant to this matter, MOHAMMED was employed as a bank
branch manager at a Wells Fargo Bank, N.A. ("Wells Fargo") branch in Alexandria, Virginia.
As a branch manager, MOHAMMED was responsible for ensuring that customers of the bank
were provided banking services and products.  MOHAMMED also provided supervision over
other branch employees, among other duties.  Before becoming a branch manager,
MOHAMMED worked as a bank teller and personal banker at Wells Fargo since January 2010.

3.     Funds deposited into Wells Fargo customers' bank accounts were owned by the
customer account holders, but the funds in customers' accounts were under the custody and
control of Wells Fargo.

4.     MOHAMMED was not authorized to withdraw and/or transfer funds from any

Wells Fargo customers' accounts or to use funds in customers' accounts for his own personal use and benefit.

5.      At all times relevant to this matter, MOHAMMED's wages were deposited directly into a bank account he controlled at Bank of America ("BOA").

6.      On or about November 5, 2014, MOHAMMED and his wife opened personal bank accounts at Navy Federal Credit Union ("NFCU"), specifically, checking account no. xxxx3196, and savings account no. xxxx0849, which accounts were exclusively used by MOHAMMED.

7.      At all times relevant to this matter, Wells Fargo and NFCU were federally-insured with either the Federal Deposit Insurance Corporation or the National Credit Union Share Insurance Fund, and were financial institutions as defined in Title 18, United States Code, Section 20, with branches in the District of Columbia, and elsewhere.

## COUNT ONE
### (Interstate Transportation of Money Taken by Fraud)

8.      The allegations contained in paragraphs 1 through 7 of this Information are re-alleged and incorporated as if fully set forth herein.

### The Scheme

9.      From between on or about February 1, 2017, through on or about March 27, 2019, in the District of Columbia and elsewhere, the defendant FETEHI MOHAMMED, did unlawfully transport and cause to be transported in interstate commerce from the State of Virginia to the District of Columbia money taken by fraud, to wit, money obtained from Wells Fargo customers' accounts, of the value of $5,000 or more, knowing the same to have been taken by fraud.

**Purpose of the Scheme to Defraud**

10.     It was a purpose of the scheme to defraud for MOHAMMED to enrich himself by directing Wells Fargo bank tellers to prepare cashiers' checks using funds withdrawn from customers' accounts without the customers' authorization, which MOHAMMED then deposited into his personal accounts at NFCU in Virginia.  The stolen funds were then used by MOHAMMED for his personal benefit.  MOHAMMED caused more than $5,000 of the fraud proceeds to be transferred from Virginia into the District of Columbia for his benefit and use.

**Manner and Means of the Scheme**

11.     It was part of the scheme that MOHAMMED used his position as a branch manager at Wells Fargo to ingratiate himself with elderly bank customers by providing them with personal assistance in their banking matters.

12.     It was further a part of the scheme that MOHAMMED accessed customer information in Wells Fargo's computer system, which allowed MOHAMMED to determine which elderly customers had sufficient funds in their accounts for the purchase of cashiers' checks without their authorization and to avoid detection.

13.     It was further a part of the scheme that MOHAMMED had customer account holders sign blank withdrawal slips relating to their bank accounts.

14.     It was further a part of the scheme that MOHAMMED fraudulently completed information on the signed blank withdrawal slips, such as the amount of the withdrawal, before presenting the withdrawal slips to bank tellers to conduct monetary transactions without the authorization of the account holders.

15.     It was further a part of the scheme that MOHAMMED falsely represented to bank tellers that he was conducting withdrawals and obtaining cashiers' checks on behalf of

customers.

16.     It was further a part of the scheme that MOHAMMED obtained customer account holders' identification information from the Wells Fargo's computer system, such as driver's license information, in order to present the identification information to a bank teller to conduct withdrawal monetary transactions from customers' accounts.

17.     It was further a part of the scheme that MOHAMMED fraudulently caused bank tellers to withdraw funds from customers' accounts to create cashier's checks without authorization.

18.     It was further a part of the scheme that MOHAMMED, in an effort to conceal his scheme, caused the cashier's checks to be made payable to NFCU, and, in some instances caused the customer's name to be placed on a cashier's check as the remitter.

19.     It was further a part of the scheme that MOHAMMED took the cashier's checks to NFCU branches in Virginia and deposited the checks into his and his wife's personal checking account no. xxxx3196 and savings account no. xxxx0849, which accounts were exclusively used by MOHAMMED.

20.     It was further a part of the scheme that between February 1, 2017, and December 31, 2018, MOHAMMED unlawfully withdrew approximately $509,864.95 from Wells Fargo customers' accounts in order to cause approximately 36 cashier's checks to be drafted. MOHAMMED then deposited approximately 36 cashier's checks into his NFCU accounts.

21.     It was further a part of the scheme that by March 27, 2019, MOHAMMED had spent or used virtually all of the $509,849.95 in fraudulently obtained funds.  Specifically, as of March 27, 2019, MOHAMMED's NFCU checking account no. xxxx3196 had a balance of $467.50, and his savings account no. xxxx0849 had a balance of $2,766.87.

22.     It was further a part of the scheme that MOHAMMED caused fraudulently obtained funds to be transported in interstate commerce from Virginia to the District of Columbia by conducting cash withdrawals at ATM machines, and purchasing goods and services totaling over the value of $5,000, from his NFCU accounts, including, on or about November 8, 2018, while in the District of Columbia, MOHAMMED made a debit purchase at Amtrak in the amount of $886.00.

**(Interstate Transportation of Money Taken by Fraud, in violation of
Title 18, United States Code, Section 2314)**

**COUNT TWO**
**(Engaging in Monetary Transactions)**

23.     The allegations set forth in paragraphs 1 through 7, and 10-21 of this Information are re-alleged and incorporated by reference.

24.     On or about November 30, 2018, within the Eastern District of Virginia and elsewhere, the defendant, FETEHI MOHAMMED, knowingly engaged or attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, to-wit: a wire transfer to American Express of $32,450.51, the funds of which were derived from specified unlawful activity, to-wit bank fraud, in violation of Title 18, United States Code, Section 1344(2).

**(Engaging in Monetary Transactions in Property Derived from
Specified Unlawful Activity, in violation of 18 U.S.C. § 1957)**

**FORFEITURE ALLEGATION**

1.     Upon conviction of the offense alleged in Count One of this Information, the defendant shall forfeit to the United States any property, real or personal, constituting or derived from proceeds the defendant obtained as the result of this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).  The

United States will also seek a forfeiture money judgment against the defendant in the amount of $509,864.95.

2.       Upon conviction of the offense alleged in Count Two, the defendant shall forfeit to the United States any property, real or personal, involved in this offense or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1). The United States will also seek a forfeiture money judgment against the defendant in the amount of $32,450.51.

3.       If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.       cannot be located upon the exercise of due diligence;

    b.       has been transferred or sold to, or deposited with, a third party;

    c.       has been placed beyond the jurisdiction of the Court;

    d.       has been substantially diminished in value; or

    e.       has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No.  472845

6

BY:    __/s/ _____

DIANE G. LUCAS, D.C. Bar. No. 443610
Assistant United States Attorney
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7724 (Lucas)
Diane.Lucas@usdoj.gov